The next case on the calendar is United States v. Pachepova. Good morning. May it please the Court. James Egan for Iyanna Pachepova. Why would an American citizen falsely implicate himself in a conspiracy to commit marriage fraud? While not an element of the offense, that certainly was, for all practical purposes, the question hanging over the trial below. Ms. Pachepova unearthed evidence that the accusing spouse, Mr. Brett Thompson, had engaged in a separate conspiracy to commit Treasury fraud. However, she was prevented from presenting extrinsic evidence to support that claim and from arguing to the jury why his involvement in that claim could have provided a motive for him to lie about his – the nature of the fraud – the marriage to Ms. Pachepova. I guess I'd start with the evidentiary basis for the Court's preclusion. The Court relied on three separate rules, 806B, 401, and 403. Starting with 806B, I think the government has abandoned any reliance on that rule, as far as I can tell. I think rightly because that rule doesn't apply to extrinsic evidence. Is it 608B? Correct. And the government doesn't seem to rely on that, and I expect you would say that the district court erred in relying on it because the evidence wasn't introduced – you weren't seeking to introduce the evidence to suggest that the witness lacked credibility. You were seeking to introduce the evidence as evidence of what? As motive to lie and potentially a bias against Ms. Pachepova or in favor of the government's prosecution. So, 608B. Well, what about, then, the district court's arguments under relevance in 403, which I think amounted in sum to the plausible that a witness would – the defendant or the witness in this case would have lied about implicating himself in a marriage fraud in order to divert attention from another crime when the clear result of that would be that the government investigators would reach out to the defendant in this case and be told, no, that's not right, and that would lead to more investigation of the government witness. That's possible. Certainly, Mr. Thompson could have realized that further investigation might ensue. However, it's, I think, possible that he could have realized that he was facing more serious charges for the Treasury one, which included, by the way, an aggravated identity theft, at least a possibility that's what Mr. Carbonero pled to, carrying a mandatory two-year consecutive sentence. So, realizing that, realizing that the marriage was over, realizing that he was still being asked to submit and to sign forms for which Ms. Pachepova was trying to get immigration benefits and seeking potentially to terminate that, could have made a decision to falsely implicate Ms. Herr into this marriage fraud, because that was, after all, the crime that the agent went to her to question her about. It's not like he just made this up out of the blue. The agent, of course, was there to question her about this case, him about this case. And the implausibility is that having admitted to the marriage fraud, he hardly takes himself off the government's radar. He rather becomes a focus of it because he's going to be a witness, and to the extent that he's, his involvement in this other crime, if it, if it existed, is discovered, what, what benefit does he get from the lie? Well, I think he, potentially, he could see it as an attempt to curry favor to, to, to have the government's in- Well, I understand this is your argument, but how plausible is it? And I'll give you another thing to throw into the calculus. Before he ever met any of the government agents, he told his girlfriend about the marriage fraud, and as I reviewed the summation arguments, nobody suggested she wasn't credible into what, as to what he told her. Well, I'm, I don't, so plausibility first. So before he ever met an agent with this purported motive to lie, he told his girlfriend that he had been involved in marriage fraud with the defendant. What she says that he said is that he married her to help her get papers, I think, is how she- Right. That's true. I mean, that can be a part of the reason, but the only question is, when he entered the marriage, did he do so- Which would be an acknowledgment that it was basically a fraud. Well, that's an argument. But your, your point is, no, no, when the agents came to see him, he realized that if he didn't admit this falsely, marriage fraud, they might go after him for this more serious crime, and I'm suggesting to you that everything, including the pre-admission of marriage fraud to his girlfriend, makes this highly implausible. Well, I think plausibility is an argument for the jury in a case where this is the defense. But you have to put it together with the other factor that it's implausible and it would require a mini-trial on this other unrelated crime. The mini-trial, I think, is a bit misdated. We don't have to prove necessarily that he committed the other crime. It's really about his state of mind. At the time, he's questioned by the agent. Did he believe that he had engaged in acts that could be prosecuted? What were you allowed to cross-examine him on with respect to the subject? There were maybe ten questions about did you – about his banking account, whether he knew that- There was some exploration allowed. You weren't allowed to put on the documents or prove that case. So if all you say is matters was his state of mind, you were allowed to do some cross-examination on that. Right. But without confronting him with the primary evidence to support what- But that's the attempt to prove the other charge. That's the mini-trial that the judge wanted to avoid. I think with respect, Your Honor, I mean, who knows what happens when you actually confront him with those checks. He may at that point admit that those were his checks and that he knew that they weren't endorsed to him. But that doesn't get you anywhere close to where you have to be. Then you have to be – then you have to do the next link in the chain, which he was thinking about that when the agents came to investigate him about marriage fraud. And the next link in the chain, he decided that it would be better to admit another crime because of this. I mean, there are a lot of links here, and the judge didn't think that – too many to make this a plausible argument. Why is that wrong? Because this is the only defense that answers a question in this case. Why would somebody falsely implicate himself? If you can't answer that question, no evidence in the world is going to convince a jury that – to acquit her. So what – Can I just ask one thing? Because it does seem to me that the inference that you would have been asking the jury to make was rather implausible. But let's assume for the sake of argument that there's some very small modicum – very small modicum of plausibility. Isn't your difficulty here that you not only – you have two hurdles you need to jump? You have one to show that it really was so substantially plausible that you – that the district court abused its discretion under 403, and it should have come in. But then you also would have to prove that it's so plausible that it's not harmless error, that – I mean, the evidence here just seemed overwhelmingly tilted against your client. And don't you really have to show two things? One, that it should have come in, and the second, that it would have made a difference? Well, it hardly seems. I mean, given that all the corroboration that surrounded the corroborating witness, that's quite a mountain for your client to climb. So certainly there was substantial evidence that the marriage was short-lived and that it was continued to – potentially that there was false information on the immigration forms to get a benefit. But the question is whether it was legitimate at the time it was entered into in 2014. The modicum of possibility – I mean, that has to be – the circuit cases – the Ninth Circuit cases I talk about in the context of right to present a defense talk about, well, when the evidence goes to the only defense in the case, it's more of a question about the other side of the equation, the prejudicial effect. And there it has to be overwhelming, the courts talk about. It's pretty bad for your client here. The prejudice has to be. Yeah. Well, I'm saying the – I mean, it seems like the evidence of guilt was pretty overwhelming, so – No. The evidence of guilt, I think, largely went to the post-marriage living arrangements. I mean, didn't the roommates all testify that there was some other girlfriend living there and that your client didn't live there? Later on, yes. So, I mean, you have all these extraneous people who come in there like, you know, who's this Potapova person? You know, they sort of kind of know her, but they say that this fellow had this other girlfriend and that she wasn't on the scene. If they get married in May 2014, the roommates that have any knowledge, would potentially have any knowledge, don't move in until August, so there's that several-month window in which she could have lived there to some extent. There's also – they're very busy people. The only evidence of – what is the evidence other than her own testimony that there was a viable marriage even for that very brief time?  During that summer, they went to a camp of essentially a sponsor parent that an employer – the parent of an employer that she had worked with who saw them together at a camp in the Adirondacks and it appeared to them to be engaged in a romantic relationship. The pastor who officiated the wedding saw no red flags. She seemed – to her, it appeared that these were legitimate romantic partners. There was – her employer later on – he comes on the scene later in 2015, I believe, who talks about how he – Mr. Thompson had come to the mall where she had worked and it appeared to her that they – he was concerned because it would distract from her obligations and it appeared to her that – to him that he – she appeared upset. That doesn't work with the timeline. That's not all that helpful given the timeline, is it? Right. So, again, I guess it would focus really on that day they got married because after that, it cuts both ways and, you know, I think there's pretty good evidence that the government argued that at some point the marriage ended and she's still claiming that it's legitimate and that she's trying to get a benefit. But, of course, that's a separate – she's being charged with marriage fraud or conspiracy. Thank you. Thank you. May it please the Court, Rajiv Dosanjh for the government. The district court did not abuse its broad discretion over evidentiary matters here in refusing to admit certain bank records during the cross-examination of the government's treasury fraud scheme unrelated to the marriage fraud scheme at issue here. Those bank records concern deposits that occurred two years before Mr. Thompson met Mrs. – Miss Potapova and I'm sorry I say it that way. It's been so long in my head that way. And where there were – those records were not probative of his intent to falsely confess and to frame her. I think that's where the district court really came down was this evidence doesn't make it more or less likely that he would falsely accuse her and in some sense a true confession would have worked better for the alleged purpose here to kind of stop the government's inquiry further. Again, even if the evidence was relevant, there's Rule 403. Can I ask you about the 403 ruling? On page 279 of the appendix where the judge lays out the ruling, he got – I think he misstated the 403 standard, right? Is that the Rule 33 decision? He says the limited probative value did not substantially outweigh the very real danger. The presentation of this evidence would confuse the issues and mislead the jury. Didn't he flip the burden? Your Honor, I think in that sentence he probably did just write it in a certain way that suggests that it could be read that way. But if you look at 278 where he states the standard, he states it correctly just a few sentences before he gets to that. He's a senior district court judge who's done this balancing many times. I think when he stated the standard so clearly just a page before, I don't think there's any real concern here that he didn't understand the standard. And I think what he was saying also is that the evidence was so not probative and the probative value, he thought, was not even nonexistent that any kind of distraction of the jury getting it into this trial within a trial about these unrelated crimes would necessarily substantially outweigh the limited, very limited probative value, if any, of that evidence. I just wanted to address the 608B question. I think the defendant rightly points out that he would be allowed to cross-examine with regard to the untruthfulness, character for untruthfulness. And I think that the judge here, I think, was concerned that the jury could get into that, could make that inference. Given how tenuous the link was between the evidence of the bank fraud and his motive to falsely confess and for bias, I think the judge was worried that a jury hearing this would jump to the incorrect conclusion. But, you know, I think... Incorrect conclusion. Sorry, they would jump to the, not the incorrect conclusion, excuse me, allowing extrinsic evidence when the value for showing bias was so limited and really nonexistent that I think that instead of following the defendant down that chain of inferences, the jury would more likely just say, well, this guy is, you know, he's just a dishonest person. Let me ask you this. I mean, counsel urges us to remember that this has got a Sixth Amendment component to it, not just a Federal Rules of Evidence issue. And that as a result of this, the defendant was denied his opportunity to make what he says was his only available defense, however much of a long shot it was, to argue that this witness was lying when he said he engaged in marriage fraud and that the reason he was lying, because everybody would wonder, well, why would he lie? He's inculpating himself, is that he knew lurking in the back of his mind that he faced even more serious charges. Now, unless I'm missing something, the evidence the defendant wished to produce on this would not have taken up more than a trial day. Why should he not have been allowed to do that? Well, I think, Your Honor, I think the Court's been clear that the constitutional values here do not strip the judge of the ability under 403 to balance, to make the judgment about whether you're going to distract the jury at the trial from the real issue at hand, which is Ms. Podopova's intent and the falsity of her claim. The courts have said that the rules of evidence, if the court, you know, rationally applies the rules of evidence, it's the constitutional violations, it's very hard to show that that's a constitutional violation. And the Confrontation Clause, the Court's been clear that that has a harmless error standard as well. But bias is, as you know, not collateral, and there are certainly cases about the importance of getting the defendant to explore it. And doesn't my colleague, you know, have a point? I mean, here the theory, it may be a long shot, but the theory is he was so concerned about this crime lurking in his past that he would agree with anything the investigators came up and said to him. He just wanted to cooperate with these investigators in order to divert attention from this thing that he knew was serious and lurking out there. And we are talking about, what, three checks? I mean, they could have been introduced in the cross-examination in a matter of moments. Well, I think, Your Honor, we'd also have to go into, first of all, the nature of the other scheme, the suggestion that he had knowledge of that scheme, that he did this, what he was told by Mr. Carbonara. It would have gotten into the details of that scheme in a way that really would have taken the jury's focus off of the central question here. And I don't think that when you have such an argument that has such kind of a long inferential chain, the fact that it's the only argument that they have, I think, doesn't really suggest that there's a constitutional right to present that, just trumping the judge's control over the trial. It just suggests that their case is very weak. And as far as, again, the other cases about bias, here, in those other cases, the bias evidence was directly related much more closely than it was here. And, again, the hurdle that he has to come over is whether this makes the falsity of his confession more likely. And I think the judge was accurate in saying that this didn't make his motive to falsely confess any more likely. The government never charged him with this fraud scheme, right? You're correct, Your Honor, because when those records came to light, because Ms. Potapova was a co-assigner on the bank account, and she had a release that all the records could be turned over to the defendants, to the defense counsel, and the government subpoenaed only records from January 2012 forward, which was a year, more than a year before Mr. Thompson met Ms. Potapova. So we didn't go back further to see those records. Once it came out at trial, this was the first time the government had seen this evidence, it was already past the statute of limitations. My point, though, that I wanted to get to was, if the government had charged him or if the government had not charged him as part of a plea agreement here or something, you're not denying they would have been able to go into that? Oh, correct, Your Honor. And that includes some of the particulars of the criminal conduct, right? I would think so, Your Honor. So instead of the government giving him a deal, the argument, this is a little hyperbole, is that he gave the deal to himself by basically admitting to what he saw as a lesser crime rather than the greater crime. In those circumstances, why shouldn't they have been able to explore it? Again, Your Honor, I think it comes down to ultimately this case is about the 403 balancing, and I think the judge rightly assumed that getting into the side matter, especially when the chain of inferences was so long, and didn't really make it the falsity of his testimony more likely, I think the judge did not abuse its discretion in that matter. And I don't think if Rule 403 was properly applied, I don't think there's the constitutional claims. I think the Court has made clear the Constitution doesn't trump the rules of evidence in a way. The rules of evidence are, if those are accurately applied, the constitutional values have been upheld in, I think, in the Court's jurisprudence. Again, I think what was really driving the judge's concern here was the limited value of this evidence and how it would have allowed in a way extrinsic evidence to be used to show Mr. Thompson's supposed character for dishonesty. And I think the judge was concerned that that was really what was driving the intent here to get this evidence in because of the extended chain of inferences and the kind of tortured argument that we're making to show bias. I think what the judge was really concerned about was that this is actually, this was 608B evidence. This is extrinsic evidence, even though the defendants were saying it wasn't. And the jury would likely ignore this kind of tortured reasoning and just say, well, this guy's a dishonest person based on extrinsic evidence. And I think that's what the judge was, why he cited 608B. But I think ultimately this case can be decided either under relevance 402 or 403. Mr. Dressage claims that a proper balancing of 403 somehow incorporate constitutional concerns. But as pointed out, the judge didn't properly balance 403. He inverted it at worst or at best, didn't require substantial outweighing of the probative value of the evidence. The government argues that the evidence is too speculative, but of course it's assuming that had we been able to confront Mr. Thompson with this evidence, that there would have been a chain of events that would have drawn the jury away from the central issue in this case. But of course that's also a speculative claim too. We don't know how Mr. Thompson would have responded if confronted with this evidence. I think Judge Livingston, you properly stated that the presentation's evidence would not have taken very long. It was three checks with three withdrawal slips. That's not a very complicated presentation. Limiting instructions, none were proffered by the government, but they could have taken care of any concern about the jury misusing the information. In the end, Ms. Potapova was prohibited from presenting and pursuing the only theory of defense that she had, and to do so violated her 608 right. So we ask this court to vacate the conviction and remand for retrial. Thank you.